UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **BEER NATION, INC.,**[1] | § | **Case No. 17-34707** |
| | § | |
| Debtor. | § | **CHAPTER 11 CASE** |
| | § | |
| | § | |

## EMERGENCY MOTION TO REJECT RESTAURANT LEASE
## WITH 11681 INTERESTS LTD. *NUNC PRO TUNC*

Comes Now Debtor Beer Nation, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**") and hereby files this emergency motion to reject a restaurant lease with 11681 Interests Ltd *nunc pro tunc* to the petition date (the "**Motion**"). In support of this Motion, the Debtor respectfully represents as follows:

## I.
## JURISDICTION AND PARTIES

1.      On July 31, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").  The Debtor is managing its businesses and affairs as a debtor-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for  the relief requested herein are section 365 of the Bankruptcy Code.

---

[1]      The Debtor's federal tax number is # 81-2728661.

1

## II.
## BACKGROUND

3.      On or about May 2, 2016, the Debtor entered into a commercial lease (the "**Lease**") with 11681 Interests Ltd. (the "**Landlord**"), pursuant to which the Landlord agreed o lease the Debtor approximately 11,320 square feet of premises, located at 11681 Westheimer Road, Houston, Texas 77077 (the "**Premises**").  A true and correct copy of the Lease is attached hereto as Exhibit A and incorporated herein by reference.  The Debtor commenced operating a restaurant on the Premises in May 2017.  Pursuant to the Lease, the Debtor is required to pay the Landlord $25,000.00 a month in rent, plus additional triple-net charges such as property taxes, common area maintenance and other charges (the "**Total Rent**"). The term of the Lease is from May 1, 2016 through April 30, 2021.

4.      Because of several disputes with the Landlord, the Debtor's business has not been allowed to survive.  The final straw was when the Landlord locked the Debtor out of the Premises at the end of June 2017.

5.      The Debtor now has no recourse but to reject the Lease and enter into a new lease at a new location that is more business friendly.

## III.
## RELIEF REQUESTED

6.      By this Motion, the Debtor requests immediate authority to reject the Lease, effective as of the date of the Petition Date.  Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor- in-possession, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." 11 U.S.C. § 365(a).

7.      Courts defer to a debtor's business judgment in rejecting an executory contract or unexpired lease, and, upon finding that a debtor has exercised its sound business judgment,

approve the rejection under section 365(a) of the Bankruptcy Code. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *see also Group of Inst'l Investors v. Chicago, Milwaukee, St. Paul, & Pacific R.R. Co.*, 318 U.S. 523, 550 (1943); *Official Comm. of Unsecured Creditors of Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 524 n.5 (5th Cir. 2004) ("The rejection decision under § 365 is generally left to the business judgment of the bankruptcy estate."); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).

8.     Rejection under § 365 is generally intended to enable the debtor to relieve itself and the bankruptcy estate from burdensome and unprofitable contracts in order to preserve and maximize the value of the bankruptcy estate. *Stewart Title Guar. Co. v. Old Republic Nat'l Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) ("[Section 365] allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." (quoting *In re Murexco Petroleum, Inc.*, 15 F.3d 60,62 (5th Cir. 1994)); *In re Mirant Corp.*, 303 B.R. 319, 330-31 (Bankr. N.D. Tex. 2003) ("There is substantial authority for the proposition that section 365 was intended to allow a trustee or debtor in possession to eliminate burdensome, unprofitable contracts and preserve for the estate's benefit valuable agreements.")

9.     In addition, many courts have authorized rejection retroactively to a date prior to the entry of the order authorizing such rejection. *See, e.g., Adelphia Bus. Solutions, Inc. v. Abnos*, 485 F.3d. 602 (2d Cir. 2007) (affirming the bankruptcy court's equitable authority to authorize the retroactive rejection of a nonresidential lease of real property where advance notice is provided); *In re Thinking Mach. Corp. v. Mellon Fin. Servs.*, 67 F.3d 1021, 1028 (1st Cir. 1995) (approving retroactive orders of rejection where the balance of equities favors such relief).

10.     In its sound business judgment, the Debtor has determined that rejecting the Lease

is in the best interest of the Debtor's estate, its creditors and all parties-in-interest in this Bankruptcy Case. The operations at the Premises do not generate sufficient revenue to pay the Total Rent, plus the Debtor's other operating expenses. In addition, the Landlord has not permitted the Debtor to make necessary adjustments to the Premises to allow the Debtor to become more profitable. The Landlord also has locked the Debtor out of the Premises, which likely has substantially damaged the Debtor's customer base.

11.     The Debtor urgently needs a new leased premise where it can afford rent and operate a successful restaurant. The Debtor wishes to avoid, and cannot afford, any continued rent for the Premises under the Lease.

**WHEREFORE**, **PREMISES CONSIDERED**, the Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit B**, granting the relief requested in this Motion and such other and further relief as may be just and proper under law and equity.

Dated: July 31, 2017                                   Respectfully submitted,

                                                                **FISHERBROYLES, LLP**
                                                                By:___/s/ H. Joseph Acosta_____
                                                                H. Joseph Acosta
                                                                State Bar No. 24006731
                                                                4514 Cole Avenue, Ste. 600
                                                                Dallas, Texas 75205
                                                                Tel: 214-614-8939
                                                                Fax: 214-614-8992
                                                                Email: joseph.acosta@fisherbroyles.com

                                                                **PROPOSED ATTORNEYS FOR DEBTORS
                                                                AND DEBTORS-IN-POSSESSION**

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing Emergency Motion to Reject has been electronically filed in the case with the Clerk of the United States Bankruptcy Court by using the CM/ECF system and a copy was also forwarded via federal express on the following parties in interest on July 31, 2017.

11681 Interests Ltd
5959 Richmond, Suite 440
Houston, TX 77057

US Trustee's Office
515 Rusk Street, Suite 3516
Houston, TX 77077

_____/s/ H. Joseph Acosta_____
H. Joseph Acosta

5

# EXHIBIT "A"

# COMMERCIAL LEASE
## -- NET -- NET -- NET --

**1. PARTIES.** This Lease, dated for reference purposes only, **MAY 1, 2016** is made by and between, **11681 INTERESTS LTD.** (herein called "Landlord") and **RIPPED T-SHIRT, LLC AND BEER NATION CORP.**, (herein called "Tenant").

**2. PREMISES.** Landlord hereby leases to Tenant and Tenant leases from Landlord for the term, at the rental, and upon all of the conditions set forth herein, that certain real property situated in the City of **HOUSTON** County of **HARRIS** State of **TEXAS** commonly known as **11681 WESTHEIMER** and described **APPROXIMATELY 11,320 SQUARE FEET OUT OF 1.538 ACRES OF LAND OUT OF CAMDEN PARK AT ROYAL OAKS, SEC. 3, ACCORDING TO THE PLAT THEREOF UNDER FILM CODE NO. 470101, IN THE MAP RECORDS OF HARRIS COUNTY, TEXAS, IN THE HENRY WOODRUFF SURVEY, A-844, HARRIS COUNTY,TEXAS** and further described on the hereto attached Exhibit "A". Said real property, including the land and all improvements thereon, is herein called "the Premises" and as further designated by Landlord.

**3. TERM.**

**3.1 Term.** The term of this Lease shall be for **FIVE (5) YEARS** commencing on **MAY 1, 2016** and ending on **APRIL 30, 2021** unless sooner terminated to any provision hereof.

**3.2 Delay of Commencement.** Notwithstanding said commencement date, if for any reason Landlord cannot deliver possession of the Premises to Tenant on said date, Landlord shall not be subject to any liability therefore, nor shall such failure affect the validity of this Lease or the obligations of Tenant hereunder or extend the term hereof, but in such case Tenant shall not be obligated to pay rent until possession of the Premises is tendered to Tenant, provided, however, that if Landlord shall not have delivered possession of the Premises within ninety (90) days from said commencement date, Tenant may, at Tenant's option, by notice in writing to Landlord within ten (10) days thereafter, cancel this Lease. If Landlord shall not have delivered possession of the Premises within one (1) year from said commencement date, Landlord may, by notice in writing to the Tenant within ten (10) days thereafter, cancel the Lease. If either party cancels as hereinabove provided, Landlord shall return any monies previously deposited by Tenant and the parties shall be discharged from all obligations hereunder.

**3.3 Early Possession.** In the event that Landlord shall permit Tenant to occupy the Premises prior to the commencement date of the term, such occupancy shall be subject to all of the provisions of this Lease. Said early possession shall not advance the termination date of this Lease.

**3.4 Delivery of Possession.** Tenant shall be deemed to have taken possession of the Premises when Landlord delivers possession of the premises to Tenant upon execution of the Lease Agreement.

**4. RENT.**

**4.1** Beginning July 1, 2016, Tenant shall pay to Landlord as base rent for the Premises equal monthly installments of **TWENTY FIVE THOUSAND DOLLARS AND NO/100 ($25,000.00)** in advance, on the first day of each month of the term hereof. Tenant shall pay Landlord upon the execution hereof the sum of **THIRTY TWO THOUSAND SIX HUNDRED AND NO/100 ($32,600.00)** in advance for **FIRST MONTH'S RENT AND CAM**. Rent for any period during the term hereof which is for less than one month shall be a pro rata portion of the monthly installment. If the Rent Commencement date herein is on any day other than the first day of the month, then the rent shall be adjusted accordingly to be due on the first day of each month following. Rent shall be payable without notice or demand and without any deduction, offset, or abatement in lawful money of the United States of America to Landlord at the address stated herein or to such other persons or at such other places as Landlord may designate in writing.

**4.2 Additional Charge.** This Lease is what is commonly called a "Net, Net, Net Lease," it being understood that Landlord shall receive the rent set for in Article 4.1 free and clear of any and all impositions, taxes, real estate taxes, liens, charges or expenses of any nature whatsoever in connection with the ownership and operation of the Premises. In addition to the rent reserved by Article 4.1, Tenant shall pay to the parties respectively entitled thereto all impositions, insurance premiums, operating charges, maintenance charges, construction costs, and any other charges, costs and expenses which arise or may be contemplated under any provisions of this Lease during the term hereof. All of such charges, costs, and expenses shall constitute additional charges, and upon the failure of Tenant to pay any of such costs, charges, or expenses, Landlord shall have the same rights and remedies as otherwise provided in this Lease for the failure of Tenant to pay rent. It is the intention of the parties hereto that this Lease shall not be terminable for any reason by the Tenant and that the Tenant shall in no event be entitled to any abatement of or reduction in rent payable hereunder, except as herein expressly provided. Any present or future law to the contrary shall not alter this agreement of the parties.

**5. SECURITY DEPOSIT.** Tenant shall deposit with Landlord upon execution hereof the sum **ONE HUNDRED THOUSAND AND NO/100 ($100,000.00)** as security for Tenant's faithful performance of Tenant's obligations hereunder. If Tenant fails to pay rent or other charges due hereunder, or otherwise defaults with respect to any provision of this Lease, Landlord may use, apply, or retain all or any portion of said deposit for the payment of any rent or other charge in default or for the payment of any other sum to which Landlord may become obligated by reason of Tenant's default, or to compensate Landlord for any loss or damage which Landlord may suffer thereby. If Landlord so uses or applies all or any portion of said deposit, Tenant shall within ten (10) days after written demand therefore deposit cash with Landlord in an amount sufficient to restore said deposit to the full amount hereinabove stated and Tenant's failure to do so shall be a breach of this Lease, and Landlord may at his option terminate this Lease. Landlord shall not be required to keep said deposit separate from its general account. If Tenant performs all of Tenant's obligation hereunder, said deposit or so much thereof as had not theretofore been applied by Landlord, shall be returned to Tenant (or, at Landlord's option, to the last assignee, if any, of Tenant's interest hereunder) within thirty (30) days after the expiration of the term hereof, or after Tenant has vacated the Premises, whichever is later.

**6. USE.**

**6.1 Use.** The Premises shall be used and occupied only for **RESTAURANT/BAR**

**6.2 Compliance with the Law.** Tenant shall, at Tenant's expense, comply promptly with all applicable statutes, ordinances, rules, laws, regulations, orders, and requirements in effect during the term or any part of the term hereof regulating the use by Tenant of the Premises. Tenant shall not use or permit the use of the Premises in any manner that will tend to create waste or nuisance, or, if there shall be more than one tenant of the building containing the Premises, which shall tend to disturb such other tenants. Building shall be defined as the entire Area, of which the Premises is a part.

**6.3 Condition of Premises.** Tenant hereby accepts the Premises in their condition existing as of the date of the possession hereunder, subject to all applicable zoning, municipal, county, and state laws, and ordinance and regulations governing and regulating the use of the Premises, and accepts this Lease subject thereto and to all matters disclosed thereby and by any exhibits attached hereto. Tenant further acknowledges the demised premises may be subject to the terms and conditions of the Americans with Disabilities Act of 1990 (hereinafter called the ADA). Tenant further agrees and acknowledges that it shall be the sole responsibility of the tenant to comply with any and all provisions of the ADA as such compliance may be required to operate the demised premises. The Tenant further agrees to indemnify and hold Landlord harmless against any claims which may arise out of tenant's failure to comply with the ADA. Such indemnification shall include, but not necessarily be limited to reasonable attorney's fees, court costs and claims. Tenant acknowledges that neither Landlord nor Landlord's agent has made any representation or warranty as to the suitability or habitability of the Premises for the conduct of Tenant's business.

ACCEPTANCE OF PREMISES:

(a) Tenant **(RIPPED T-SHIRT, LLC AND BEER NATION CORP.)** ACCEPTS THE PREMISES "As-Is". LANDLORD **(11681 INTERESTS LTD.)** HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATIONS AS TO THE COMMERCIAL SUITABILITY, PHYSICAL CONDITION, LAYOUT, FOOTAGE, EXPENSES, OPERATION OR ANY OTHER MATTER AFFECTING OR RELATING TO THE PREMISES AND THIS AGREEMENT, EXCEPT AS HEREIN SPECIFICALLY SET FORTH OR REFERRED TO AND TENANT HEREBY EXPRESSLY ACKNOWLEDGES THAT NO SUCH REPRESENTATIONS HAVE BEEN MADE. LANDLORD MAKES NO OTHER

1 of 8                                   Initials: Landlord _____ Tenant _____

WARRANTIES, EXPRESS OR IMPLIED OF MERCHANTABILITY, MARKETABILITY, FITNESS OR SUITABILITY FOR A PARTICULAR PURPOSE OR OTHERWISE, EXCEPT AS SET FORTH HEREIN. ANY IMPLIED WARRANTIES ARE EXPRESSLY DISCLAIMED AND EXCLUDED.

(B)   THE REPRESENTATIONS, WARRANTIES, COVENANTS, TERMS, CONDITIONS, AND WAIVERS SET FORTH IN THIS SECTION SHALL SURVIVE THE TERMINATION OF THE LEASE.

(C)   THE GROSS SQUARE FEET AND THE NET RENTABLE SQUARE FEET OF THE LEASED PREMISES AT LANDLORDS OPTION MAYBE RE-MEASURED AND CALCULATED AFTER THE TENANT HAS TAKEN POSSESSION OF THE LEASED PREMISES AND IF IT DIFFERS FROM THE SQUARE FOOTAGE SET FORTH HEREIN, THE RENTS, TENANT'S SHARE OF OPERATING EXPENSES AND ALL RELEVANT PARAGRAPHS CONTAINED IN THE LEASE SHALL BE ADJUSTED ACCORDINGLY.

**6.4  Insurance Cancellation.** Notwithstanding the provisions of Article 6.1, hereinabove, no use shall be made or permitted to be made of the Premises nor acts done which will cause the cancellation of any insurance policy covering said Premises or any building of which the Premises may be a part; and if Tenant's use of the Premises causes an increase in said insurance rates, Tenant shall pay any such increase.

**6.5  Landlord's Rule and Regulations.** Tenant shall faithfully observe and comply with the rules and regulations that Landlord shall from time to time promulgate. Landlord reserves the right from time to time to make all reasonable modifications to said rules and regulations. The additions and modifications to those rules and regulations shall be binding upon Tenant upon delivery of a copy to Tenant. Landlord shall not be responsible to Tenant for the nonperformance of any of said rules and regulations by any other tenants or occupants.

**7. MAINTENANCE, REPAIRS, AND ALTERATIONS.**
    **7.1  Tenant's Obligations.** Tenant shall, during the term of this Lease, keep in good order, condition, and repair, the Premises and every part thereof, structural or nonstructural, and all adjacent sidewalks, landscaping, driveways, parking lots, fences, and signs located in the areas which are adjacent to and included with the Premises. Landlord shall incur no expense nor have any obligation of any kind whatsoever in connection with maintenance of the Premises, and Tenant expressly waives the benefits of any statute now or hereafter in effect which would otherwise afford Tenant the right to make repairs at Landlord's expense or to terminate this Lease because of Landlord's failure to keep the Premises in good order, condition, and repair. In the event the Premises constitute a portion of a multiple occupancy building, Landlord shall be responsible for coordinating any repairs and other maintenance of any portion of the building, and Tenant shall reimburse Landlord for Tenant's proportionate share of the costs of such repairs and maintenance and any other sums specified in any agreement to which Landlord is a party.

    **7.2  Surrender.** On the last day of the term hereof, or on any sooner termination, Tenant shall surrender the Premises to Landlord in good condition, broom clean, ordinary wear and tear expected. Tenant shall repair any damages to the Premises occasioned by its use thereof, or by the removal of Tenant's trade fixtures, furnishings, and equipment pursuant to Article 7.4.3, which repair shall include the patching and filling of holes and repair of structural damage.

    **7.3  Landlord's Rights.** If Tenant fails to perform Tenant's obligations under this Article 7, Landlord may at its option (but shall not be required to) enter upon the Premises after ten (10) days prior written notice to Tenant and put the same in good order, condition, and repair, and the cost thereof together with interest thereon at the rate of ten percent (10%) per annum shall become due and payable as additional rental to Landlord together with Tenant's next rental installment.

    **7.4  Alterations, Additions, and Improvements.**
        **7.4.1** Tenant shall not, without Landlord's prior written consent, make any alterations, improvements, or additions in, on, or about the Premises. As a condition to giving such consent, Landlord may require that Tenant remove any such alterations, improvements, additions, or utility installations at the expiration of the term, and to restore the premises to their prior condition.

        **7.4.2** Before commencing any work relating to alterations, additions, and improvements affecting the premises, Tenant shall notify Landlord in writing of the expected date of commencement thereof. Landlord shall then have the right at any time and from time to time to post and maintain on the Premises such notices as Landlord reasonably deems necessary to protect the Premises and Landlord from mechanics' liens, materialmen's liens, or any other liens. In any event, Tenant shall pay, when due, all claims for labor or materials furnished to Tenant at the Premises. Tenant shall not permit any mechanics' or materialmen's liens to be levied against the Premises for any labor or material furnished to Tenant or claimed to have been furnished to Tenant or to Tenant's agents or contractors in connection with work of any character performed or claimed to have been performed on the Premises by or at the direction of Tenant.

        **7.4.3** Unless Landlord requires their removal, as set forth in Article 7.4.1, all alterations, improvements, or additions which may be made on the Premises shall become the property of Landlord and remain upon and surrendered with the Premises at the expiration of the term. Notwithstanding the provisions of this Article 7.4.3, Tenant's machinery, equipment and other trade fixtures other than that which is affixed to the Premises so that it cannot be removed without material damage to the Premises, shall remain the Property of Tenant and may be removed by Tenant subject to the provisions of Article 7.2.

    **7.5  Signs.** Tenant shall not place or affix any signs or other objects upon or to the roof or exterior walls of the Premises or on the interior which can be seen from the exterior, or paint, or otherwise deface the exterior walls of the Premises without prior written consent of Landlord. Any signs installed by Tenant shall conform with applicable laws and deed and other restrictions. Tenant shall remove all signs at the termination of this Lease and shall repair any damage and close any holes caused or revealed by such removal.

**8. INSURANCE, INDEMNITY.**
    **8.1  Insuring Party.** As used in this Article 8, the term "insuring party" shall mean the party who has the obligation to obtain the insurance required hereunder. The insuring party in this case shall be designated in Article 20. Whether the insuring party is the Landlord or the Tenant, Tenant shall, as additional rent for the Premises, pay the cost of all insurance required hereunder. If Landlord is the insuring party, Tenant shall, within ten (10) days following demand by Landlord reimburse Landlord for the cost of the insurance so obtained.

    **8.2  Liability Insurance.** The Tenant shall obtain and keep in force during the term of this Lease a policy of comprehensive public liability insurance insuring Landlord and Tenant against any liability arising out of the ownership, use, occupancy, or maintenance of the Premises and all areas appurtenant thereto. Such insurance shall be in an amount of not less than $1,000,000.00 for injury to or death of one person in any one accident or an amount of not less than $2,000,000.00 for injury to or death of more than one person in any one accident or occurrence. Such insurance shall further insure Landlord and Tenant against liability for property damage of at least $1,000,000.00. The limits on the amount of insurance coverage provided above shall not, however, limit the liability of Tenant hereunder. In the event that the Premises constitute a part of a large property, said insurance shall have a Landlord's Protective Liability endorsement attached thereto. If the Tenant shall fail to procure and maintain said insurance the Landlord may, but shall not be required to procure and maintain the same, but at the expense of the Tenant.

    **8.3  Property Insurance.** The insuring party shall obtain and keep in force during the term of this Lease a policy or policies of insurance covering loss or damage to the Premises in the amount of the full replacement value thereof providing against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, special extended perils (all risk) and sprinkler leakage. Said insurance shall provide for payment for loss thereunder to Landlord and to the holder of a first mortgage or deed of trust on the Premises. If the insuring party should fail to procure and maintain said insurance, the other party may, but shall not be required to, produce and maintain the same, but at the expense of the Tenant.

    **8.4 Insurance Policies.** Insurance required hereunder shall be in companies approved by Landlord. The insuring party shall deliver prior to possession to the other party copies of policies of such insurance or certificates evidencing the existence and amount of such insurance with loss payable clauses satisfactory to Landlord. No such policy shall be cancelable or subject to reduction of coverage or other modification except after ten (10) days prior written notice to Landlord. If Tenant is the insuring party, Tenant shall within ten (10) days prior to the expiration of such policies furnish Landlord with renewals or "binders" thereof, or Landlord may order such insurance and charge the cost thereof to Tenant, which amount shall be payable by Tenant upon demand. Tenant shall not do or permit to be done anything which shall invalidate the insurance policies referred to in Article 8.3. Tenant shall forthwith, upon Landlord's demand, reimburse Landlord for any additional premiums attributable to any act or omission or operation of Tenant causing such increase in the cost of insurance. If Landlord is the insuring party, and if the insurance policies maintained hereunder cover other improvements in addition to the Premises, Landlord shall deliver to Tenant a written statement setting forth the amount of any such insurance cost increase and showing in reasonable detail the manner in which it has been computed.

Initials: Landlord _____ Tenant _____

**8.5 Waiver of Subrogation.** Tenant and Landlord each waives any and all rights of recovery against the other, or against the officers, employees, agents, and representatives of the other, for loss of or damage to such waiving party or its property or the property of others under its control, when such loss or damage is insured under any insurance policy in force at the time of such loss or damage. Tenant and Landlord shall, upon obtaining the policies of insurance required hereunder, give notice to the insurance carriers that the foregoing mutual waiver of subrogation is contained in this Lease.

**8.6 Hold Harmless.** Tenant shall indemnify, defend and hold Landlord harmless from any and all claims arising from Tenant's use of the Premises from the conduct of its business or from any activity, work, or things which may be permitted or suffered by Tenant in or about the Premises and shall further indemnify, defend, and hold Landlord harmless from and against any and all claims arising from any breach or default in the performance of any obligation on Tenant's part to be performed under the provision of this Lease or arising from any negligence of Tenant of any of its agents, contractors, employees, or invites and from any and all costs, attorney's fees, expenses, and liabilities incurred in the defense of any such claim or any action or proceeding brought thereon. Tenant hereby assumes all risk of damage to property or injury to persons in or about the Premises from any cause, and Tenant hereby waives all claims in respect thereof against Landlord, excepting where such damage arises out of negligence of Landlord.

**8.7 Exemption of Landlord from Liability.** Tenant hereby agrees that Landlord shall not be liable for injury to Tenant's business or any loss of income therefrom or for damage to the goods, wares, merchandise or other property of Tenant, Tenant's employees, invitees, customers, or any other person in or about the Premises; nor, unless through its negligence, shall Landlord be liable for injury to the person of Tenant, Tenant's employees, agents, or contractors, and invitees, whether such damage or injury is caused by or results from fire, steam, electricity, gas, water, or rain, of from the breakage, leakage, obstruction, or other defects of pipes, sprinklers, wires, appliances, plumbing, air conditioning or lighting fixtures, or from any other cause, whether the said damage or injury results from conditions arising upon the Premises or upon other portions of the building of which the Premises are a part, or from other sources or places, and regardless of whether the cause of such damage or injury or the means of repairing the same is inaccessible to Landlord or Tenant. Landlord shall not be liable for any damage arising from any act or neglect of any other tenant, if any, of the building in which the Premises are located.

## 9.  DAMAGE OR DESTRUCTION.

**9.1**  In the event the improvements on the Premises are damaged or destroyed, partially or totally, from any cause whatsoever, whether or not such damage or destruction is covered by insurance required to be maintained under Article 8, the Tenant shall repair, restore, and rebuild the Premises to their condition existing immediately prior to such damage or destruction and this Lease shall continue in full force and effect. Such repair, restoration, and/or rebuilding (all of which are herein called the "repair") shall be commenced within a reasonable time after such damage or destruction shall be diligently prosecuted to completion. There shall be no abatement of rent or any other obligation of Tenant hereunder by reason of such damage or destruction. The proceeds of any insurance maintained under Article 8.3 shall be made available to Tenant for payment of the cost and expense of the repair, provided, however, that such proceeds may be made available to Tenant subject to reasonable conditions including, but not limited to, architect's certification of costs and retention of a percentage of such proceeds pending final notice of completion. In the event that such proceeds are not made available to Tenant within ninety (90) days after such damage or destruction, Tenant shall have the option for thirty (30) days, commencing on the expiration of such ninety (90) day period of canceling the Lease. In the event that the insurance proceeds are insufficient to cover the cost of the repair, then any amount in excess thereof required to complete the repair shall be paid by Tenant. Notwithstanding anything contained herein to the contrary, this Article 9 shall be subject to the terms of any and all mortgages on the Premises.

**9.2 Damage Near End of Term.** If the Premises are partially destroyed or damage during the last six (6) months of the term of this Lease, Landlord may, at Landlord's option, cancel and terminate this Lease, as of the date of occurrence of such damage, by giving written notice to Tenant of Landlord's  election to do so within thirty (30) days after the date of occurrence of such damage.

**9.3 Proration.** Upon termination of this Lease pursuant to this Article 9, a pro rata adjustment of rent based upon a thirty (30) day month shall be made. Landlord shall, in addition, return to Tenant so much of Tenant's security deposit as has not theretofore been applied by Landlord.

## 10.  REAL PROPERTY TAXES.

**10.1 Payment of Taxes.** Tenant shall pay all real property taxes applicable to the Premises during the term of this Lease. All such payment shall be made at least ten (10) days prior to the delinquency of such payment. Tenant shall promptly furnish Landlord with satisfactory evidence that such taxes have been paid. If any such taxes paid by Tenant shall cover any period of the time prior to or after the expiration of the term hereof, Tenant's share of such taxes shall be equitably prorated to cover only the period of time within the tax fiscal year during which this Lease shall be in effect, and Landlord shall reimburse Tenant to the extent required. If Tenant shall fail to pay any such taxes, Landlord shall have the right to pay the same, in which case Tenant shall repay such amount to Landlord with Tenant's next rent installment together with interest at the rate of ten percent (10%) per annum.

**10.2 Definition of "Real Property" Taxes.** As used herein, the term "real property tax" shall include any form of assessment, license fee, rent tax, levy, penalty, or tax (other than inheritance or estate taxes), imposed by any authority having the direct or indirect power to tax, including any city, county, state, or federal government, or any school, agricultural, lighting, drainage, or other improvement district thereof, as against any legal or equitable interest of Landlord in the Premises or in the real property of which the Premises are a part, as against Landlord's right to rent or other income therefrom, or as against Landlord's business of leasing the Premises; and Tenant shall pay any and all charges and fees which may be imposed by the EPA or other similar government regulations or authorities.

**10.3 Joint Assessment.** If the Premises are not separately assessed, Tenant's liability shall be an equitable proportion of the real property taxes for all of the land and improvements included with the tax parcel assessed, such proportion to be determined by Landlord from the respective valuations assigned in the assessor's work sheets or such other information as may be reasonably available. Landlord's reasonable determination thereof, in good faith, shall be conclusive.

**10.4 Personal Property Taxes.**

**10.4.1** Tenant shall pay prior to the delinquency all taxes assessed against and levied upon leasehold improvements, trade fixtures, furnishings, equipment, and all other personal property to be assessed and billed separately from the real property of Landlord.

**10.4.2** If any of Tenant's  said personal property shall be assessed with Landlord's real property, Tenant shall pay Landlord the taxes attributable to Tenant within ten (10) days after receipt of written statement setting forth the taxes applicable to Tenant's property.

**11. COMMON AREAS.** When, in fact, there are Common Areas, then the following shall apply:

**11.1 Definitions.** The phrase "Common Areas" means all areas and facilities outside the Premises that are provided and designated for general use and convenience of Tenant and other tenants and their respective officers, agents, and employees, customer, and invitees. Common Areas include (but are not limited to) pedestrian sidewalks, landscaped areas, roadways, parking areas, and railroad tracks, if any. Landlord reserves the right from time to time to make changes in the shape, size, design, style, location, number, and extent of the land and improvements constituting the Common Areas. Landlord may designate from time to time additional parcels of land for use as a part thereof; and any additional land so designated by Landlord for such use shall be included until such designation is revoked by Landlord.

**11.2 Maintenance.** During the term of this Lease, Landlord shall operate, manage, and maintain the Common Areas so that they are clean and free from accumulations of debris, filth, rubbish, and garbage. The manner in which such Common Areas shall be maintained, and the expenditures for such maintenance, shall be at the sole discretion of Landlord, and the use of the Common Areas shall be subject to such reasonable regulations and changes therein as Landlord shall make from time to time, including (but not by way of limitation) the right to close from time to time, if necessary, all or any portion of the Common Areas to such extent as may be legally sufficient, in the opinion of Landlord's counsel, to prevent a dedication thereof or the accrual of rights of any person or of the public therein, or to close temporarily all or any portion of such Common Areas for such purposes. Tenant shall pay to Landlord Tenant's prorated share of any and all costs in connection with any and all maintenance of the Common Areas.

**11.3 Tenant's Rights and Obligations.** Landlord hereby grants to Tenant, during the term of this Lease, the license to use, for the benefit of Tenant and its officers, agents, employees, customers, and invitees, in common with the other entitled to such use, the Common Areas as they from time to time exist, subject to the rights, powers, and privileges herein reserved to Landlord. Storage, either permanent or temporary, of any materials, supplies, or equipment in the Common Areas is strictly prohibited. Should Tenant violate this provision of the Lease, then in such event,

Initials: Landlord _____ Tenant _____

Landlord may at his option, either terminate this Lease, or without notice to Tenant remove said materials, supplies, or equipment from the Common Areas, and place such items in storage, the cost thereof to be reimbursed by Tenant within ten (10) days from receipt of a statement submitted by Landlord. All subsequent costs in connection with the storage of said items shall be paid to Landlord by Tenant as accrued. Failure of Tenant to pay these charges within ten (10) days from receipt of statement shall constitute a breach of this Lease. Tenant and its officers, agents, employees, customers, and invitees shall park their motor vehicles only in areas designated by Landlord for that purpose from time to time. Within five (5) days after request from Landlord, Tenant shall furnish to Landlord a list of the license numbers assigned to its motor vehicles, and those of its officers, agents, and employees. Tenant shall not at any time park or permit the parking of motor vehicles, belonging to it or to other, so as to interfere with the pedestrian sidewalks, roadways, and loading areas, or in any portion of the parking areas not designated by Landlord for such use by Tenant. Tenant agrees that receiving and shipping of goods and merchandise and all removal of refuse shall be made only by way of the loading areas constituting part of the Premises. Tenant shall repair, at its cost, all deterioration or damages to the Common Areas occasioned by its lack of ordinary care.

**11.4 Construction.** Landlord, while engaged in constructing improvements or making repairs or alterations in or about the Premises or in their vicinity, shall have the right to make reasonable use of the Common Areas.

**12. UTILITIES.** Tenant shall pay for all water, sewer, gas, heat, light, power, telephone, and other utilities and services supplied to the Premises, together with any taxes thereon. If any such services are not separately metered to Tenant, Tenant shall pay a reasonable proportion of all cost of utilities to be determined by Landlord of all charges for jointly metered utilities with other premises. In addition, Tenant if required by Landlord shall pay its proportionate cost of sub-metering utilities.

**13. ASSIGNMENT AND SUBLETTING.**
**13.1 Landlord's Consent Required.** Tenant shall not voluntarily or by operation of law assign, transfer, mortgage, sublet, or otherwise transfer or encumber all or any part of Tenant's interest in this Lease or in the Premises without Landlord's prior written consent. Any attempted assignment, transfer, mortgage, encumbrances, or subletting without such consent shall be void and shall constitute a breach of the Lease. Any transfer of Tenant's interest in this Lease or in the Premises from Tenant by merger, consolidation, or liquidation, or by any subsequent change in the ownership of thirty percent (30%) or more of the capital stock of Tenant shall be deemed a prohibited assignment within the meaning of this Article 13.

**13.2 No Release of Tenant.** Regardless of Landlord's consent, no subletting or assignment shall release Tenant of Tenant's obligations to pay the rent and to perform all other obligations to be performed by Tenant hereunder for the term of this Lease. The acceptance of rent by Landlord from any other person shall not be deemed to be a waiver by Landlord of any provision hereof. Consent to one assignment or subletting shall not be deemed consent to any subsequent assignment or subletting.

**14. DEFAULTS, REMEDIES.**
**14.1 Defaults.** The occurrence of any one or more of the following events shall constitute a default and breach of this Lease by Tenant:

**14.1.1** The vacating and/or abandonment of the Premises by Tenant. The failure of Tenant to open and operate its business as stated herein.

**14.1.2** The failure by Tenant to make any payment of rent or any other payment required to be made by Tenant hereunder, as and when due.

**14.1.3** The failure by Tenant to observe or perform any of the covenants, conditions, or provisions of this Lease to be observed or performed by Tenant, other than described in Paragraph 14.1.2, above, where such failure shall continue for a period of thirty (30) days after written notice thereof from Landlord to Tenant; provided, however, that if the nature of Tenant's default is such that more than thirty (30) days are reasonably required for its cure, the Tenant shall not be deemed to be in default if Tenant commenced such cure within said thirty (30) days period and thereafter diligently prosecutes such cure to completion.

**14.1.4** The making by Tenant of any general assignment, or general arrangement for the benefit of creditors.

**14.1.5** The filing by or against Tenant of a petition to have Tenant adjudged a bankrupt or a petition for reorganization or arrangement under any law relating to bankruptcy (unless, in the case of a petition filed against Tenant, the same is dismissed within sixty (60) days).

**14.1.6** The appointment of a trustee or receiver to take possession of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, where possession is not restored to Tenant within thirty (30) days.

**14.1.7** The attachment, execution, or other judicial seizure of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease, where such seizure is not discharged within thirty (30) days.

**14.2 Remedies in Default.**

**14.2.1** Landlord may terminate this Lease and forthwith repossess the Premises and be entitled to recover forthwith as damages a sum of money equal to the total of:

**14.2.1.1** The cost of recovering the Premises,

**14.2.1.2** The unpaid rent earned at the time of termination, plus interest thereon at the maximum applicable lawful interest rate from the due date,

**14.2.1.3** The balance of the rent for the remainder of the term of the Lease, less the fair market rental value of the Premises for said period, and

**14.2.1.4** Any other sum of money and damages owed by Tenant to Landlord.

**14.2.2** Landlord may terminate Tenant's right of possession (but not the Lease) and may repossess the Premises by forcible entry or detainer suit or otherwise, without demand or notice of any kind to Tenant and without terminating this Lease, in which event Landlord may, but shall be under no obligation to, relet the same for the account of Tenant for such rent and upon such terms as shall be satisfactory to Landlord. For the purpose of such reletting Landlord is authorized to decorate or to make any repairs, changes, alterations, or additions in or to the Premises that may be necessary or convenient; and if Landlord shall fail or refuse to relet the Premises, or if the same are relet and a sufficient sum shall not be realized from such reletting after paying the unpaid rent and additional rent due hereunder earned but unpaid at the time of reletting plus interest thereon at the maximum lawful interest rate, the cost of recovering possession, and all of the costs and expenses of such decorations, repairs, changes, alterations, and additions and the expense of such reletting and of the collection of the rent accruing therefrom to satisfy the rent provided for in the Lease to be paid, Tenant shall pay to Landlord as damages a sum equal to the amount of the rental reserved in this Lease for such periods; or, if the Premises have been relet, the Tenant shall satisfy and pay any such deficiency upon demand therefor from time to time; and Tenant agrees that Landlord may file suit to recover any sums falling due under the terms of this Article 14 from time to time, and that no delivery to or recovery of any portion due Landlord hereunder shall be any defense in any action to recover any amount not theretofore reduced to judgment in favor of Landlord nor shall such reletting be construed as an election of the part of Landlord to terminate this Lease unless a written notice of such intention be given to Tenant by Landlord. Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this Lease for any such previous breach.

**14.2.3** In the event of default by Tenant in any of the terms or covenants of this Lease, or in the event the Premises are abandoned by Tenant, Landlord shall have the right but not the obligation to relet same for the remainder of the term provided for herein; and if the rent received through reletting does not at least equal the rent provided for herein, Tenant shall pay and satisfy the deficiency between the amount of the rent so provided for and that received through reletting, including, but not limited to, the cost of renovating, altering, and decorating for a new occupant. Nothing herein shall be construed as in any way denying Landlord the right, in the event of abandonment of the Premises or other breach of this Agreement by Tenant, to treat the same as an entire breach and at Landlord's option to terminate this Lease and/or immediately seek

4 of 8                                    Initials: Landlord _____ Tenant _____

recovery for the entire breach of this Lease and any and all damages which Landlord suffers thereby.

14.2.4  Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by law, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent of other sums due to Landlord hereunder or of any damages accruing to Landlord by reason of the violation of any term, provision, and covenant herein contained.  No waiver by Landlord of any violation or breach of any of the terms, provisions, and covenants herein contained shall be deemed or construed to constitute a waiver of any other violation or breach of any of the terms, provisions, and covenants herein contained.  Forbearance by Landlord to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default.

14.2.5  In the event Tenant fails or refused to make timely and punctual payment of any rental or other sums payable under this Lease as and when the same shall become due and payable, or in the event of any breach of any of the terms or provisions of this Lease by Tenant, in addition to other remedies available to Landlord, Landlord at its option shall be entitled, and is hereby authorized, without any notice to Tenant whatsoever, to enter into and upon the Premises by use of a master key, a duplicate key, or any other peaceable means, and to change, alter, and/or modify the door locks on all entry doors of the Premises, permanently excluding Tenant and its officers, principals, agents, employees, representatives, and invitee therefrom. In the event that Landlord has either permanently repossessed the Premises as aforesaid or has elected to terminate this Lease by reason of Tenant's default, Landlord shall not thereafter be obligated to provide Tenant with a key to the Premises at any time, regardless of any amounts subsequently paid by Tenant; provided, however, that in any such instance, during Landlord's normal business hours and at the convenience of Landlord and upon receipt of a written request from Tenant accompanied by such written waivers and releases as Landlord may require, Landlord may, at its option:

14.2.5.1  Escort Tenant or its authorized representatives to the Premises to retrieve any personal belongings or other property of Tenant not subject to the Landlord's lien or security interest described herein, or,

14.2.5.2  Obtain a list from Tenant of such personal property as Tenant intends to remove, whereupon Landlord shall remove such property and make it available to Tenant at a time and place designated by Landlord. In the event Landlord elects option 14.2.5.2, above, Tenant shall pay in cash and in advance all costs and expenses estimated by Landlord to be incurred in removing such property and making it available to Tenant, including, but not limited to, all moving and/or storage charges theretofore incurred by Landlord with respect to such property.  If Landlord elects to exclude Tenant from the Premises without permanently repossessing the Premises or terminating this Lease pursuant to the foregoing, then Landlord shall not be obligated to permit Tenant entry into the Premises or provide Tenant with a key to re-enter the Premises until such time as all delinquent rental and other sums, including interest and late charges thereon, if any, due under this Lease have been fully paid, and all other defaults, if any, have been completely and timely cured to Landlord's satisfaction (if such occurs prior to actual permanent repossession or termination), and Landlord has been given assurances by Tenant reasonably satisfactory to Landlord evidencing Tenant's ability to satisfy its remaining obligations under this Lease. Landlord's remedy hereunder shall be in addition to, and not lieu of, any of its other remedies set forth in this Lease or otherwise available to Landlord at law or in equity. It is intended that this paragraph and the provisions herein contained shall supersede and be paramount to any conflicting provisions of the Texas Property Code, as well as any successor statute governing the rights of landlords to change locks of commercial tenants.

14.3  Default by Landlord.  Landlord shall not be in default unless Landlord fails to perform obligations required of Landlord within a reasonable time, but in no event later than thirty (30) days after written notice by Tenant to Landlord and to the holder of any first mortgage or deed of trust covering the Premises whose name and address shall have theretofore been furnished to Tenant in writing, specifying wherein Landlord has failed to perform such obligation; provided, however, that if the nature of Landlord's obligation is such that more than thirty (30) days are required for performance, then Landlord shall not be in default if Landlord commences performance within such thirty (30) day period and thereafter diligently prosecutes the same to completion.

14.4  Late Charges.  Tenant hereby acknowledges that late payment by Tenant to Landlord of rent and other sums due hereunder will cause Landlord to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges, and late charges which may be imposed on Landlord by the terms of any mortgage or trust deed covering the Premises. Accordingly, if any installment of rent or any other sum due from Tenant shall not be timely received by Landlord or Landlord's designee, then Tenant shall pay to Landlord a late charge which shall be additional rent hereunder equal to ten percent (10%) of such overdue amount. The parties hereby agree that such late charge represents a fair and reasonable estimate of the cost Landlord will incur by reason of late payment by Tenant. Acceptance of such late charge by Landlord shall in no event constitute a waiver of Tenant's default with respect to such overdue amount, nor prevent Landlord from exercising any of the other rights and remedies granted hereunder.

14.5  LANDLORD'S LIEN.  IN ADDITION TO THE STATUTORY LANDLORD'S LIEN, TENANT HEREBY GRANTS TO LANDLORD A SECURITY INTEREST TO SECURE PAYMENT OF ALL RENT AND OTHER SUMS OF MONEY BECOMING DUE HEREUNDER FROM TENANT, UPON ALL GOODS, WARES, EQUIPMENT, FIXTURES, FURNITURE, AND OTHER PERSONAL PROPERTY OF TENANT SITUATED IN OR UPON THE PREMISES, TOGETHER WITH THE PROCEEDS FROM THE SALE OR LEASE THEREOF. SUCH PROPERTY SHALL NOT BE REMOVED WITHOUT THE CONSENT OF LANDLORD UNTIL ALL ARREARAGES IN RENT AND OTHER SUMS OF MONEY THEN DUE TO LANDLORD HEREUNDER SHALL FIRST HAVE BEEN PAID AND DISCHARGED. UPON THE OCCURRENCE OF ANY EVENT OF DEFAULT, LANDLORD MAY, IN ADDITION TO ANY OTHER REMEDIES PROVIDED HEREIN OR BY LAW, ENTER UPON THE PREMISES AND TAKE POSSESSION OF ANY AND ALL GOODS, WARES, EQUIPMENT, FIXTURES, FURNITURE, AND OTHER PERSONAL PROPERTY OF TENANT SITUATED ON THE PREMISES WITHOUT LIABILITY OF TRESPASS OR CONVERSION, AND SELL THE SAME AT PUBLIC OR PRIVATE SALE, WITH OR WITHOUT HAVING SUCH PROPERTY AT THE SALE, AFTER GIVING TENANT REASONABLE NOTICE OF THE TIME AND PLACE OF ANY SUCH SALE UNLESS OTHERWISE REQUIRED BY LAW, NOTICE TO TENANT OF SUCH SALE SHALL BE DEEMED SUFFICIENT IF GIVEN IN THE MANNER PRESCRIBED IN THIS LEASE AT LEAST TEN (10) DAYS BEFORE THE TIME OF THE SALE. ANY PUBLIC SALE MADE UNDER THIS PARAGRAPH SHALL BE DEEMED TO HAVE BEEN CONDUCTED IN A COMMERCIALLY REASONABLE MANNER IF HELD IN THE PREMISES OR WHERE THE PROPERTY IS LOCATED, AFTER THE TIME, PLACE, AND METHOD OF SALE AND A GENERAL DESCRIPTION OF THE TYPES OF PROPERTY TO BE SOLD HAVE BEEN ADVERTISED IN A DAILY NEWSPAPER PUBLISHED IN HARRIS COUNTY, TEXAS, FOR FIVE (5) CONSECUTIVE DAYS BEFORE THE DATE OF THE SALE. LANDLORD OR ITS ASSIGNS MAY PURCHASE AT A PUBLIC SALE AND, UNLESS PROHIBITED BY LAW, AT A PRIVATE SALE. THE PROCEEDS FROM ANY DISPOSITION DEALT WITH IN THIS PARAGRAPH, LESS ANY AND ALL EXPENSES CONNECTED WITH THE TAKING OF POSSESSION, HOLDING, AND SELLING OF THE PROPERTY (INCLUDING REASONABLE ATTORNEY'S FEES AND LEGAL EXPENSES), SHALL BE APPLIED AS A CREDIT AGAINST THE INDEBTEDNESS SECURED BY THE SECURITY INTEREST GRANTED HEREIN. ANY SURPLUS SHALL BE PAID TO TENANT OR AS OTHERWISE REQUIRED BY LAW; TENANT SHALL PAY ANY DEFICIENCIES FORTHWITH. UPON REQUEST BY LANDLORD, TENANT AGREES TO EXECUTE AND DELIVER TO LANDLORD A FINANCING STATEMENT IN FORM SUFFICIENT TO PERFECT THE SECURITY INTEREST OF LANDLORD IN THE AFOREMENTIONED PROPERTY AND PROCEEDS THEREOF UNDER THE PROVISIONS OF THE UNIFORM COMMERCIAL CODE IN FORCE IN THE STATE OF TEXAS. THE STATUTORY LIEN FOR RENT IS EXPRESSLY RESERVED; THE SECURITY INTEREST HEREIN GRANTED IS IN ADDITION AND SUPPLEMENTARY THERETO.

15. CONDEMNATION.  If the Premises or any portion thereof are taken under the power of eminent domain or sold by Landlord under the threat of the exercise of said power (all of which is herein referred to as "condemnation"), this Lease shall terminate as to the part so taken as of the date the condemning authority takes title or possession, whichever occurs first.  If more than twenty-five percent (25%) of the floor area of any buildings on the Premises or more than twenty-five percent (25%) of the land area of the Premises not covered with buildings is taken by condemnation, either Landlord or Tenant may terminate this Lease as of the date of the condemning authority takes possession by notice in writing of such election within twenty (20) days after Landlord and Tenant shall have notified Tenant of the taking or, in the absence of such notice, then within twenty (20) days after the condemning authority shall have taken possession. If this Lease is not terminated by either Landlord or Tenant, then it shall remain in full force and effect as to the portion of the Premises remaining, provided the rental shall be reduced in proportion to the floor area of the buildings taken within the Premises as bears to the total floor area of all buildings located on the Premises.  In the event this Lease is not so terminated, then Landlord agrees, at Landlord's sole cost, to as soon as reasonably possible restore the Premises to a complete unit of like quality and character as existed prior to the condemnation. All awards for the taking of any part of the Premises or any payment made under the threat of the exercise of power of eminent domain shall be the property of Landlord, whether made as compensation for diminution of value of the leasehold or for the taking of the fee or as severance damages; provided, however, that Tenant shall be entitled to any award for loss of or damage to Tenant's trade fixtures and removable personal property. Notwithstanding anything contained herein to the contrary, this Article 15 shall be subject to the terms of any and all mortgages on the Premises.

## 16. GENERAL PROVISION.

### 16.1 Offset Statement.

**16.1.1**  Tenant shall at any time upon not less than ten (10) days prior written notice from Landlord execute, acknowledge, and deliver to Landlord a statement in writing (1) certifying that this Lease is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this Lease, as so modified, is in full force and effect) and the date to which the rent, security deposit, and other charges are paid in advance, if any; and (2) acknowledging that there are not, to Tenant's knowledge, any uncured defaults on the part of Landlord hereunder, or specifying such defaults, if any, which are claimed.  Any such statement may be conclusively relied upon by any prospective purchaser or encumbrance of the Premises.

**16.1.2**  Tenant failure to deliver such statement within such time shall be conclusive upon Tenant (1) that this Lease is in full force and effect, without modification except as may be represented by Landlord, (2) that there are no uncured defaults in Landlord's performance, and (3) that not more than one (1) month's rent has been paid in advance.

**16.1.3**  If Landlord desires to finance or refinance the Premises, or any part thereof, Tenant hereby agrees to deliver to any lender designated by Landlord such financial statements of Tenant as may be reasonably required by such lender.  Such statements shall include the past three (3) years financial statements of Tenant.  All such financial statements shall be received by Landlord in confidence and shall be used only for the purposes herein set forth.

**16.2  Landlord's Interests.**  In the event of any transfer of such title of interest, Landlord herein named (and in case of any subsequent transfers the then grantor) shall be relieved from and after the date of such transfer of all liability as respects Landlord's obligations thereafter to be performed provided that any funds in the hands of Landlord or the then grantor at the time of such transfer, in which Tenant  has an interest, shall be delivered to the grantee.  The obligations contained in this Lease to be performed by Landlord shall, subject as aforesaid, be binding on Landlord's successors and assigns, only during their respective periods of ownerships.

**16.3  Severability.**  The invalidity of any provision of this Lease, as determined by a court of competent jurisdiction, shall in no way affect the validity of any other provision hereof.

**16.4  Interest on Past-Due Obligations.**  Except as expressly herein provided, any amount due to Landlord not paid when due shall bear interest at ten percent (10%) per annum from the date due.  Payment of such interest shall not excuse or cure any default by Tenant under this Lease.

**16.5  Time of Essence.**  Time is of the essence.

**16.6  Captions.**  Article and paragraph captions are not part hereof.

**16.7  Incorporation of Prior Agreements; Amendments.**  This Lease contains all agreements of the parties with respect to any matter mentioned herein.  No prior agreement or understanding pertaining to any such matter shall be effective.  This Lease may be modified in writing only, signed by the parties in interest at the time of the modification.

**16.8  Waivers.**  No waiver by Landlord of any provision hereof shall be deemed a waiver of any other provision hereof or of any matter subsequent breach by Tenant of the same or any other provision.  Landlord's consent to or approval of any act shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act by Tenant.  The acceptance of rent hereunder by Landlord shall not be a waiver of any preceding breach by Tenant of any provision hereof, other than the failure of Tenant to pay the particular rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such rent.

**16.9  Recording.**  Tenant shall not record this Lease.  Any such recordation shall be a breach under this Lease.

**16.10  Holding Over.**  If Tenant should remain in possession of the Premises after the expiration or termination of the term of this Lease, without the execution by Landlord and Tenant of a new Lease, then Tenant shall be deemed to be occupying the Premises as a tenant-at-sufferance, subject to all the covenants and obligations of this Lease and at a daily rental of two (2) times the per-day rental provided hereunder (and which is applicable for the month preceding the month in which the date of expiration or termination occurs), computed on the basis of a thirty (30) day month.

**16.11  Cumulative Remedies.**  No remedy or election hereunder shall be deemed exclusive but shall whenever possible be cumulative with all other remedies at law or in equity.

**16.12  Covenants and Conditions.**  Each provision of this Lease performable by Tenant shall be deemed both a covenant and a condition.

**16.13  Binding Effect; Choice of Law.**  Subject to any provisions hereof restricting assignment or subletting by Tenant and subject to provisions of Article 16.2, this Lease shall bind the parties, their personal representatives, successors and assigns.  This Lease shall be governed by the laws of the state where the Premises are located.

**16.14  Subordination and Attornment.**

**16.14.1**  This Lease, at Landlord's option, shall be subordinate to any ground lease, mortgage, deed of trust, or any other hypothecation for security now and hereafter placed upon the real property of which the Premises are a part (The Real Property) and to any and all advances made on the security thereof and to all renewals, modifications, consolidations, replacements, and extensions thereof. Notwithstanding such subordination, Tenant's right to quiet possession of the Premises shall not be disturbed if Tenant is not in default and so long as Tenant shall pay the rent and observe and perform all of the provisions of this Lease unless this Lease is otherwise terminated pursuant to its terms.  If any mortgagee, trustee, or ground lessor shall elect to have this Lease prior to the lien of its mortgage, deed of trust, or ground lease, and shall have given written notice thereof to Tenant, this Lease shall be deemed prior to such mortgage, deed of trust, or ground lease, whether this Lease is dated prior or subsequent to the date of said mortgage, deed of trust, or ground lease or the date of recording thereof.

**16.14.2**  Tenant agrees to execute any documents required to effectuate such subordination or to make this Lease prior to the lien of any mortgage, deed of trust, or ground lease, as the case may be, and failing to do so within ten (10) days after written demand does hereby make, constitute, and irrevocably appoint Landlord as Tenant's attorney in fact and in Tenant's name, place, and stead to do so.

**16.14.3**  __Attornment.__ In the event of any foreclosure or other sale to, or acquisition of the Premises by any other manner in lieu of foreclosure by a creditor of Landlord (the purchaser at foreclosure or the transferee in lieu of foreclosure, including and lender if it is such purchaser or transferee, and such purchaser's/transferee's successors and assigns being hereinafter called the "Purchaser"), Tenant agrees that Tenant shall attorn to Purchaser provided Purchaser shall recognize the Lease as a direct lease from Purchaser to Tenant and Purchaser shall assume and be bound to Tenant to perform the obligations of Landlord under this Lease, except that Purchaser shall not (a) be liable for any previous act or omission of Landlord under this Lease which accrued prior to the date of acquisition of Landlord's interest except for (i)ongoing defaults under this Lease; or (ii) acts or omissions of which Purchaser had written notice prior to Purchaser's acquisition of Landlord's interest under this Lease; (b) be subject to any offset, claim or defense which shall theretofore have accrued against Landlord, unless the basis of such offset, claim or defense remains uncured and Purchaser had notice thereof prior to Purchaser's acquisition of Landlord's interest under this Lease; (c) have any obligation with respect to any security deposit under the Lease unless such security deposit has been delivered to Purchaser; or (d) be bound by any previous prepayment of rent for a period greater than one (1) month in advance of its due date under this Lease, unless such prepayment shall have been expressly approved in writing by the Landlord's creditor.

**16.15  Attorney's Fees.**  If either party named herein brings an action to enforce the terms hereof or declare rights hereunder, the prevailing party in any such action, on trial or appeal, shall be entitled to his reasonable attorney's fees to be paid by the losing party as fixed by the Court.

Initials: Landlord_____   Tenant _____

**16.16 Landlord's Access.** Landlord and Landlord's agents shall have the right to enter the Premises at reasonable times for the purpose of inspecting the same, showing the same to prospective purchasers or lenders, and making such alterations, repairs, improvements, or additions to the Premises, or to the building of which they are a part, as Landlord may deem necessary or desirable. Landlord may at any time place on or about the Premises any ordinary "For Sale" signs; and Landlord may at any time during the last one hundred twenty (120) days of the term hereof place on or about the Premises any ordinary "For Sale or Lease" signs, all without rebate of rent or liability to Tenant.

**16.17 Auctions.** Tenant shall not place any auction sign upon the Premises or conduct any auction thereon without Landlord's prior written consent.

**16.18 Merger.** The voluntary or other surrender of this Lease by Tenant, or a mutual cancellation thereof, shall not work a merger, and shall, at the option of Landlord, terminate all or any existing subtenancies or may, at the option of Landlord, operate as an assignment to Landlord of any or all of such subtenancies.

**16.19 Corporate Authority.** If Tenant is a corporation, each individual executing this Lease on behalf of said corporation represents and warrants that he is duly authorized to execute and deliver this Lease on behalf of said corporation in accordance with duly adopted resolution of the Board of Directors and said corporation or in accordance with a duly adopted resolution of the Board of Directors of said corporation or in accordance with the Bylaws of said corporation, and that this Lease is binding upon said corporation in accordance with its terms.

**16.20 Landlord's Liability.** Tenant agrees to look solely to Landlord's estate and interest in the land and building (or the [ground] lease of the building, if applicable) and the Premises for the satisfaction of any right or remedy of Tenant or the collection of any judgment (or other judicial process) requiring the payment of money by Landlord, in the event of any liability by Landlord, and no other property or assets of Landlord (or the partners or members thereof, if Landlord is other than an individual or corporation) shall be subject to levy, execution, or attachment or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this Lease, the relationship of Landlord and Tenant hereunder, or Tenant's use and occupancy of the Premises or the building, or any other liability of Landlord to Tenant. Upon notification to Tenant of a transfer of this Lease by Landlord, the Landlord shall be and hereby is entirely freed and relieved of any and all covenants, obligations, and liabilities of Landlord hereunder, and it shall be deemed and construed as a covenant running with the land without further agreement between the parties or their successors in interest or between the parties or any transferee of title to the land and building (or any applicable ground lease or any lease of the building) that the transferee or the lessee has assumed and agreed to carry out any and all such covenants, obligations, and liabilities of Landlord hereunder.

**16.21 Personal Property.** In the event Tenant does not remove Tenant's property when the lease terminates by its term or by any other provisions provided for in this lease, Tenant hereby relinquishes all rights to any and all personal property left in the premises at such time.

**16.22 Relocation.** For any reason Landlord may deem necessary, Landlord at its sole cost and expense may be giving Tenant prior written notice have the right to relocate Tenant to another space similar in size.

**17. PERFORMANCE BOND.** At any time Tenant either desires to or is required to make any repairs, alterations, additions, improvements, or utility installation thereon, pursuant to Articles 7.4 or 9.1 herein, or otherwise, Landlord may at his sole option require Tenant at Tenant's sole cost and expense to obtain and provide to Landlord a lien and completion bond in an amount equal to one and one-half (1 1/2) times the estimated cost of such improvements, to insure Landlord against liability for mechanics' and materialmen's liens and to insure completion of the work.

**18. INTENTIONALLY DELETED**

**19. NOTICES.** Whenever under this Lease provision is made for any demand, notice, or declaration of any kind or where it is deemed desirable or necessary by either party to give or serve any such notice, demand, or declaration to the other party, it shall be in writing and served by messenger, facsimile, electronic mail, or sent by United States mail, certified return receipt, postage prepaid, addressed at the addresses set forth in below:

To Landlord at:     11681 INTERESTS LTD.
                    5959 RICHMOND SUITE 440
                    HOUSTON TEXAS 77057
                    FAX. 713-782-7445
                    EAMIL: STEPHEN@GREENBERGCOMPANY.COM

To Tenant:          RIPPED T-SHIRT, LLC AND BEER NATION CORP.
                    28488 WOODWARD AVENUE # 150   OR    11681 WESTHEIMER
                    ROYAL OAK, MI 48073                 HOUSTON TEXAS 77082
                    SCOLLY03@YAHOO.COM
                    FAX# 586-758-3740

**20. INSURING PARTY.** The insuring party under this Lease shall be the ___LANDLORD___.

**21. PRORATIONS.** Beginning April 15, 2016 and continuing thereafter, in addition to the monthly base rent, Tenant shall pay monthly **SEVEN THOUSAND SIX HUNDRED AND NO/100 ($7,600.00)** along with the monthly rental payment, as an estimate for escrow on real property taxes and insurance for the Premises. Actual expenses will be calculated annually, and the actual annual statement will be provided to Tenant. Tenant shall pay any difference between the estimate amount collected and the actual expenses within ten (10) days after written demand. If, however, an overpayment has been made, Tenant shall receive a credit for the overage amount paid. Provided Tenant has made all payments as required under the Lease and no default exist, then Tenant shall have within ninety (90) days from the date of any such notice, to review the property expenses of the property as stated herein and Tenant shall pay all costs and expenses including Landlord's reasonable costs and expenses incurred in connection with such review.

**22. CONSUMER PRICE INDEX ADJUSTMENTS.** The monthly installments of rent payable by Tenant to Landlord provided for in Article 4.1 of the Lease are referred to herein as the "Base Rent." Following the first year of the lease term, the Base Rent due under this Article 22 shall be the "Adjusted Base Rent" referred to below.  It is agreed by and between Tenant and Landlord that the Base Rent shall be subject to adjustment in the CPI (as the term is defined below).

**22.1 Definitions:** In adjustment of the Base Rent as provided for above, the following definitions shall be used:

**22.1.1** "Lease Year" shall mean each period of twelve (12) consecutive months hereunder, beginning on the first day of the month in which the Lease commenced, and again beginning on the last day of the preceding twelve (12) consecutive months and continuing throughout the term of this Lease.

**22.1.2** "Bureau" shall mean the U.S. Department of Labor, Bureau of Labor Statistics, or any successor agency of the United States that shall issue the indexes or data referred to in subparagraph 22.1.4

**22.1.3** "CPI" shall mean the Consumer Price Index for All Urban Consumers Houston, Texas, (All Items: 1982-84 equals 100) issued by the Bureau.

**22.2 Calculation of Rent Adjustment.** The Base Rent shall be adjusted on an annual basis (and the Base Rent, as adjusted, is referred to herein as the "Adjusted Base Rent") as follows:

**22.2.1** At the end of the first Lease Year, the CPI for the preceding twelve (12) calendar months shall be determined

7 of 8

Initials: Landlord ___   Tenant ___

by Landlord; and the annual Base Rent for the preceding Lease Year shall be increased by the same percentage as the CPI, and that total amount shall be the annual Rent for the succeeding Lease Year; such total sum shall be divided by twelve (12), and the resulting amount shall be the Adjusted Base Rent for the second Lease Year of the Lease Term. Thereafter, and for each and every Lease Year, the CPI for the preceding twelve (12) calendar months shall be determined by Landlord and shall increase the annual Adjusted Base Rent for the preceding twelve (12) months by the same percentage as such CPI, which shall determine the new Adjusted Base Rent for the succeeding twelve (12) months. It is intended that the Base Rent due from Tenant to Landlord shall be adjusted on the basis of the same calculation (which shall apply on a compounding basis) for each successive Lease Year thereafter throughout the term of this Lease or any extension.

22.3  **Alternative Index.**  In the event that (i) the Bureau ceases to use the 1982-84 average of 100 as the basis of calculation, or (ii) a substantial change is made in the number of character of "market basket" items used in determining the CPI, or (iii) Landlord and Tenant mutually agree in writing that the CPI does not accurately reflect the purchasing power of the dollar, or (iv) the CPI shall be discontinued for any reason, Landlord shall designate from indexes supplied by the Bureau an alternative index comparable to the CPI together with information which will make possible the conversion to the alternative index in computing the adjusted rental. If for any reason the Bureau does not furnish such and index and such information, the parties shall thereafter accept and use such other index of comparable statistics on the cost of living for the county in which the Premises is located, as shall be computed and published by an agency of the United States or by a responsible financial periodical of recognized authority then to be selected by Landlord (but subject to reasonable approval by Tenant).

22.4  **No Reduction of Base Rent.**  In no event shall the Base Rent be reduced from that of the preceding Lease Year.  If there is a decrease in the CPI from one Lease Year anniversary date to another, then the Base Rent in effect for the succeeding Lease Year shall be the greater of either the Base Rent payable during the preceding Lease Year or the minimum increase set forth in paragraph 22.5 hereof.

22.5  **Percentage Increase Limits.**  Notwithstanding anything contained above to the contrary, the CPI for any Lease Year shall never be less than four percent (4%).

23.  **ENVIRONMENTAL MATTERS.**  Tenant shall prevent the presence, use, generation, release, discharge, storage, disposal, or transportation of any Hazardous Materials on, under, in, above, to, or from the Premises other than in strict compliance with all applicable federal, state, and local laws, regulations, and order. For the purposes of the section, "Hazardous Materials" shall refer to any substances, materials, and wastes that are or become regulated as hazardous or toxic substances under any applicable local, state, or federal law, regulation, or order. Tenant shall indemnify, defend, and hold Landlord harmless from and against:

23.1  Any loss, cost, expense, claim, or liability arising out of any investigation, monitoring, clean-up, containment, removal, storage, or restoration work ("Remedial Work") required by or incurred by Landlord or any nongovernmental entity or person in a reasonable belief that such work is required by any applicable federal, state, or local law, governmental agency, or political subdivision; and

23.2  Any claims of third parties for loss, injury, expense, or damage arising out of the presence, release, or discharge of any Hazardous Materials on, under, in, above, to, or from the Premises.  In the event any Remedial Work is so required under any applicable federal, state, or local law, Tenant shall perform or cause to be preformed the Remedial Work in compliance with such law, regulation, or order. All Remedial Work shall be performed by one or more contractors under the supervision of a consulting engineer, each selected by Tenant and approved in advance in writing by Landlord.  In the event Tenant shall fail to commence the Remedial Work in timely fashion or fail to prosecute diligently the Remedial Work to completion, Landlord may, but shall not be required to, cause the Remedial Work to be performed, subject fully to the indemnification provisions of this paragraph.  This Article shall survive the termination of said Lease.

23.3  Tenant hereby agrees that upon the termination of this Lease it shall be responsible to remove, at its sole cost and expense, all underground and above-ground storage tanks. The removal of the same shall be included under the indemnity and hold harmless provisions set forth in Article 23.1 and 23.2, above.

24.  **COMMENCEMENT DATE.**  Notwithstanding the fact that the "Commencement Date" of this Lease shall be a date subsequent to the effective date of this Lease, Landlord and Tenant intend and agree that each shall have vested rights immediately upon execution of this Lease; and it is intended that this Lease shall be fully binding upon the parties hereto and shall be in full force and effect from and after execution hereof by both Tenant and Landlord.

Effective date of this Lease Agreement:     S-2-16

The parties hereto have executed this Lease at the place specified immediately adjacent to their respective names.

LANDLORD:
11881 INTERESTS LTD.
BY: DG INTERESTS INC., GP

BY: _____
     DAVID GREENBERG, PRESIDENT

TENANT:
RIPPED T-SHIRT, LLC

BY: _____
     SCOTT HAIT, MANAGING MEMBER

BEER NATION CORP.

BY: _____
     SCOTT HAIT, PRESIDENT

[PLACE AN "X" IN THE SPACE PROVIDED IF EXHIBIT(S) OR ATTACHMENT(S) ARE APPLICABLE OR "N/A" IF NOT APPLICABLE:

| | | |
|---|---|---|
| X | EXHIBIT "A" | -Site Plan |
| X | EXHIBIT "B" | -Renewal Option |
| N/A | EXHIBIT "C" | -Construction Exhibit |
| N/A | EXHIBIT "D" | -Sign Criteria |
| X | Personal Guarantee | |
| X | Building Rules and Regulations | |
| X | Notice to Tenant | |
| X | Exhibit "E" Restaurant Addendum | |

Initials:  Landlord _____  Tenant _____

# EXHIBIT "A"

RE:  LEASE DATED MAY 1, 2016 BETWEEN 11681 INTERESTS LTD., AS LANDLORD AND RIPPED T-SHIRT, LLC AND
BEER NATION CORP., AS TENANTS FOR 11681 WESTHEIMER, HOUSTON, HARRIS COUNTY, TEXAS



INITIALS:   LANDLORD:                    TENANT:

# EXHIBIT "B"

RE:  LEASE DATED MAY 1, 2016 BETWEEN 11681 INTERESTS LTD., AS LANDLORD AND RIPPED T-SHIRT, LLC AND BEER NATION, CORP. AS TENANTS FOR 11681 WESTHEIMER, HOUSTON, HARRIS COUNTY, TEXAS

"RENEWAL OPTION": Provided that at the end of the primary term of this Lease Tenant not be in default of any term, condition, or covenant contained in this Lease, Tenant (but not any assignee or subtenant) shall have the right and option of renew this Lease by written notice delivered to Landlord no later than 180 days prior to expiration of the term currently in force for the additional term of _____FIVE (5)_____ years, under the same terms, conditions, and covenants contained herein, except:

   A.  The rental for the renewal term shall be based on the then prevailing rental rates for properties of equivalent quality, size, utility, and location with the length of the lease term and credit standing of the Tenant herein to be taken into account.

   B.  Upon notification from Tenant of the exercise of this Renewal Option, Landlord shall within fifteen (15) days thereafter notify Tenant in writing of the proposed rental for the renewal term; Tenant shall within fifteen (15) days following receipt of same notify Landlord in writing of the acceptance or rejection of the proposed rental.  In event of rejection by Tenant, this Lease shall terminate upon the expiration of the current term in effect.

   In addition to the foregoing, Tenant is hereby granted ___TWO (2)___ additional term(s) __FIVE (5)__ years each. Such __TWO (2)__ additional term(s) of _FIVE (5)_ years each shall be exercised upon the same terms and conditions set forth above.



# BUILDING RULES AND REGULATIONS

RE: LEASE DATED MAY 1, 2016 BETWEEN 11681 INTERESTS LTD., AS LANDLORD AND RIPPED T-SHIRT, LLC DBA BEER NATION AND BEER NATION INC., AS TENANTS FOR 11681 WESTHEIMER, HOUSTON, HARRIS COUNTY, TEXAS

1. Landlord agrees to furnish Tenant two keys without charge. Additional keys will be furnished at a nominal charge. Tenant shall not re-key the leased premises without approval from Landlord. Tenant shall provide Landlord new keys should the leased premises is re-keyed.

2. Tenant will refer all contractors, contractor's representatives and installation technical tendering any service on or to the leased premises for Tenant, to Landlord for Landlord's approval and/or supervision before performance of any contractual service. This provision shall apply to all work performed in the property including installation of telephones, telegraph equipment, electrical devices and attachments and installations of any nature affecting floors, walls, woodwork, trim, windows, ceiling, equipment or any other physical portion of the property. Tenant shall not access any roof of the property without Landlord's approval.

3. No Tenant shall at any time occupy any part of the property as sleeping or lodging quarters.

4. Tenant shall not place, install or operate on the leased premises or in any part of the property, any engine, stove or machinery, or conduct mechanical operations or cook thereon or therein, or place or use in or about the Leased Premises any explosives, gasoline, kerosene, oil, acids, caustics, or any inflammable, explosive, or hazardous material without written consent of Landlord.

5. Landlord will not be responsible for lost or stolen personal property, equipment, money or jewelry from Tenants or Tenant's employees and/or invites or public rooms regardless of whether such loss occurs when locked against entry or not.

6. No bird, fowl or animals shall be brought into or kept in or about the property.

7. Landlord at Landlord's option shall not receive or carry messages for or to any Tenant or other person, nor contract with or render free or paid services to any Tenant or Tenant's agents, employees or invites.

8. Landlord will not permit entrance to Tenant's leased premises to any person at any time without permission by Tenant, except employees, contractors, or service personnel directly supervised by Landlord.

9. None of the entries, passages, doors, elevators, hallways or stairway shall be blocked or obstructed, or any rubbish, litter, trash, or material of any nature placed, emptied or thrown into these areas, or such areas be used at any time except as access or egress by Tenant, Tenant's agents, employees or invites.

10. The water closet and other water fixtures shall not be used for any purpose other than those for which they were constructed, and any damage resulting to them for misuse, or by the defacing or injury of any part of the Property shall be borne by the person who shall occasion it. No person shall waste water by interfering with the faucets or otherwise.

11. Nothing shall be thrown out of the windows of the property, or down the stairways or other passages or hallways or common areas. Landlord's desire is to maintain the property the highest standard of dignity and good taste consistent with comfort and convenience for the Tenants. Any action or condition not meeting this high standard should be reported directly to Landlord. Your cooperation will be mutually beneficial and sincerely appreciated.

12. All trash, refuse and/or waste materials shall be regularly removed from the leased premises before the hours of business opening and, until removal, shall be stored: a) in adequate containers, which containers shall be located so as not be visible to the general public. b) so as not to constitute any health or fire hazard or nuisance to the property. c) All trash shall be thrown inside the dumpster containers, not around the dumpster areas.

13. Under no circumstances, without the express written consent of Landlord, shall there be any sale of merchandise or display of merchandise outside the defined exterior walls of the property, specifically sidewalk sales. No sale of merchandise by tent sale, sidewalk sale, truckload sale or the like shall be permitted in the parking lot or other common areas.

14. Tenant, at tenant's sole cost and expense, shall cause the demised premises to be treated for rodents and other pests and vermin by a licensed exterminator. Should tenant fail to maintain the lease premises as stated herein, then Landlord at its option, may select an extermination contractor to perform such services at Tenant's sole cost and expense.

15. Tenant shall not conduct or permit any fire, bankruptcy, auction or "going out of business" sale (whether real or fictitious) in the leased premises without written permission of Landlord, or utilize any unethical method of business operation.

16. Tenant shall not install aerials, amplifiers or similar devises not to use in or about the leased premises any advertising medium which may be heard or seen outside the leased premises, such as flashing lights, search lights, loud speakers, stereo or radio broadcasts except as otherwise permitted in the Lease. No person shall disturb the occupants of the property by the use of any musical instruments, the making of unseemly noises, or any unreasonable use.

17. Except as permitted in the lease, Tenant shall not place or permit to be placed or maintained on the roof, doors, windows or walls of the leased premises any sign, antenna, microwave dishes, waning, canopy, advertising matter or other things of any kind without prior written approval from Landlord. All deliveries or shipments of any kind to and from the leased premises, including loading or unloading of goods, shall be made only by way of the rear of the leased premises or at any other location designated by Landlord.

18. Tenant agrees to furnish Landlord in writing a list of Tenant's employees' motor vehicle license numbers within five (5) days after taking possession of the leased premises, and Tenant agrees thereafter to notify Landlord of any changes within five (5) days after such changes occur; Tenant hereby authorizes Landlord to attach violation notices to such motor vehicles, and second violation will be subject to penalty at Landlord option, payable by Tenant immediately upon receipt of invoice from Landlord. Neither Landlord nor its agents will be liable for loss of or damage to any vehicle or any contents of such vehicle or accessory of any such vehicle, or property left in any of the parking areas. Further, Tenant understands and agrees that: a) Landlord will not be obligated to provide any traffic control, security protection, or operator for the parking areas; b) Tenant uses the parking areas as its own risk; c) Landlord will not be liable for personal injury or death or theft, or loss of, or damage to property.

19. No Tenant or employee of Tenant shall use any area for motor vehicle parking except the area(s) specifically designated for employee parking. No employee shall designate any area for employee parking except such area as are designated in writing by Landlord.

20. No person shall use any parking area for any purpose other than the parking of motor vehicles without prior written consent of Landlord. All tenant motor vehicles shall be parked in its designated parking areas only and parked in an orderly manner within the painted lines defining the individual parking places. During peak periods of business activity, limitations may be imposed as to the length of time for parking use. Such limitations may be in specified areas.

**LANDLORD RESERVES THE RIGHT TO ADOPT AND PROMULGATE FROM TIME TO TIME FURTHER RULES AND REGULATIONS AND TO AMEND, SUPPLEMENT, REVOKE, RESCIND THE SAME, APPLICABLE TO THE PROPERTY, THE LEASED PREMISES AND/OR COMMON AREAS. NOTICE OF SUCH RULES AND REGULATIONS AND AMENDMENTS AND SUPPLEMENTS THERETO, IF ANY, SHALL BE GIVEN TO TENANT, THE LISTING OF SPECIFIC ITEMS IS NOT INTENDED TO BE EXCLUSIVE, BUT TO INDICATE IN GENERAL THE MANNER IN WHICH THE RIGHT TO USE THE COMMON AREAS AND THE PROPERTY IS LIMITED AND CONTROLLED BY LANDLORD.**



# GUARANTEE

RE: LEASE DATED MAY 1, 2016 BETWEEN 11681 INTERESTS LTD., AS LANDLORD AND RIPPED T-SHIRT, LLC AND BEER NATION INC., AS TENANTS FOR 11681 WESTHEIMER, HOUSTON, HARRIS COUNTY, TEXAS

THE UNDERSIGNED, in consideration of the leasing of the Premises described above to the Tenant herein mentioned, do hereby absolutely, unconditionally and irrevocably guarantee to Landlord FOR A PERIOD OF TWO (2) YEARS FROM THE LEASE COMMENCMENT DATE the full and complete performance of all of Tenant's full payment by Tenant of all rentals, additional rentals and other charges and amounts required to be paid thereunder.

THE UNDERSIGNED do each hereby waive all requirements of notice of the acceptance of this Guarantee and all requirements of notice of breach or nonperformance by Tenant. The undersigned further waive any demand by Landlord and/or prior action by Landlord of any nature whatsoever against Tenant. The undersigned's obligations hereunder shall remain fully binding although Landlord may have waived one or more defaults by Tenant, extended the time of performance by Tenant, modified or amended the Lease, released, returned or misapplied other collateral given later as additional security (including other guarantees) and released Tenant from the performance of its obligations under such Lease.

THE UNDERSIGNED agree that in the event of insolvency, bankruptcy, or reorganization of Tenant, any liquidation, dissolution, winding-up or cancellation of the legal status of Tenant, any composition or arrangement by Tenant with its creditors, and irrespective of any rejection, assignment or termination of the Lease or any of the terms and conditions thereof by Tenant or any trustee of Tenant in connection with any petition for bankruptcy or reorganization filed by Tenant under the Bankruptcy Code or any other applicable federal or state law, the undersigned shall nonetheless remain liable hereunder for the full and complete performance of the terms and conditions of the Lease to be complied with or performed by Tenant during the entire Lease Term designated in the Lease.

If this Guarantee is signed by more than one person, their obligations shall be joint and several and the release of one of such guarantors shall not release any other of such guarantors. This Guarantee shall be binding upon the undersigned and their respective heirs, successors, successors in interest, executors, administrators, representatives and assigns, and shall continue in effect subsequent to any assignment of the Lease by Tenant or by operation of law.

IN WITNESS WHEREOF, the undersigned have set their hands and seals this ___7___ day of __MAY_____ 2016

SCOTT HAIT
29488 WOODWARD AVENUE # 150
ROYAL OAK, MI 48073
TEL# 535-5786
CELL# 248-535-5786
EMAIL: SCOLLY03@YAHOO.COM



# NOTICE TO TENANT

RE: LEASE DATED MAY 1, 2016 BETWEEN 11681 INTERESTS LTD., AS LANDLORD AND RIPPED T-SHIRT, LLC AND BEER NATION INC., AS TENANTS FOR 11681 WESTHEIMER, HOUSTON, HARRIS COUNTY, TEXAS

TENANT REPRESENTS TO THE LANDLORD, IT HAS FULLY INSPECTED THE LEASE PREMISES AND DETERMINED IT IS SUITABLE FOR TENANT'S INTENDED USE. TENANT ACKNOWLEDGES AND ACCEPTS THE LEASE PREMISES IN ITS "AS-IS" "WHERE-IS" CONDITION WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER FROM THE LANDLORD OR ITS AGENT.

THE ABOVE REFERRED LEASE AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Executed this ___2___ day of ___MAY___, 2016.

LANDLORD:                                              TENANT:

11681 INTERESTS LTD.                                  RIPPED T-SHIRT, LLC.

BY: DG INTERESTS INC., GP

BY: _____              BY: _____

DAVID GREENBERG, PRESIDENT                    SCOTT HAIT, MANAGING MEMBER

                                                      BEER NATION CORP.

                                                      BY: _____

                                                      SCOTT HAIT, PRESIDENT



## Information About Brokerage Services

11-2-2015

*Texas law requires all real estate license holders to give the following information about brokerage services to prospective buyers, tenants, sellers and landlords.*

**TYPES OF REAL ESTATE LICENSE HOLDERS:**
- A BROKER is responsible for all brokerage activities, including acts performed by sales agents sponsored by the broker.
- A SALES AGENT must be sponsored by a broker and works with clients on behalf of the broker.

**A BROKER'S MINIMUM DUTIES REQUIRED BY LAW** (A client is the person or party that the broker represents):
- Put the interests of the client above all others, including the broker's own interests;
- Inform the client of any material information about the property or transaction received by the broker;
- Answer the client's questions and present any offer to or counter-offer from the client; and
- Treat all parties to a real estate transaction honestly and fairly.

**A LICENSE HOLDER CAN REPRESENT A PARTY IN A REAL ESTATE TRANSACTION:**

**AS AGENT FOR OWNER (SELLER/LANDLORD):** The broker becomes the property owner's agent through an agreement with the owner, usually in a written listing to sell or for property management agreement. An owner's agent must perform the broker's minimum duties above and must inform the owner of any material information about the property or transaction known by the agent, including information disclosed to the agent or subagent by the buyer or buyer's agent.

**AS AGENT FOR BUYER/TENANT:** The broker becomes the buyer/tenant's agent by agreeing to represent the buyer, usually through a written representation agreement. A buyer's agent must perform the broker's minimum duties above and must inform the buyer of any material information about the property or transaction known by the agent, including information disclosed to the agent by the seller or seller's agent.

**AS AGENT FOR BOTH – INTERMEDIARY:** To act as an intermediary between the parties the broker must first obtain the written agreement of each party to the transaction. The written agreement must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. A broker who acts as an intermediary:
- Must treat all parties to the transaction impartially and fairly;
- May, with the parties' written consent, appoint a different license holder associated with the broker to each party (owner and buyer) to communicate with, provide opinions and advice to, and carry out the instructions of each party to the transaction.
- Must not, unless specifically authorized in writing to do so by the party, disclose:
  - that the owner will accept a price less than the written asking price;
  - that the buyer/tenant will pay a price greater than the price submitted in a written offer; and
  - any confidential information or any other information that a party specifically instructs the broker in writing not to disclose, unless required to do so by law.

**AS SUBAGENT:** A license holder acts as a subagent when aiding a buyer in a transaction without an agreement to represent the buyer. A subagent can assist the buyer but does not represent the buyer and must place the interests of the owner first.

**TO AVOID DISPUTES, ALL AGREEMENTS BETWEEN YOU AND A BROKER SHOULD BE IN WRITING AND CLEARLY ESTABLISH:**
- The broker's duties and responsibilities to you, and your obligations under the representation agreement.
- Who will pay the broker for services provided to you, when payment will be made and how the payment will be calculated.

**LICENSE HOLDER CONTACT INFORMATION:** This notice is being provided for information purposes. It does not create an obligation for you to use the broker's services. Please acknowledge receipt of this notice below and retain a copy for your records.

| Licensed Broker/Broker Firm Name or Primary Assumed Business Name | License No. | Email | Phone |
|---|---|---|---|
| Designated Broker of Firm | License No. | Email | Phone |
| Licensed Supervisor of Sales Agent/ Associate | License No. | Email | Phone |
| Sales Agent/Associate's Name | License No. | Email | Phone |

Buyer/Tenant/Seller/Landlord Initials  **SH**    Date  **MAY 2 2016**

Regulated by the Texas Real Estate Commission          Information available at www.trec.texas.gov
TAR 2501                                                                                           IABS 1-0

Greenberg & Company, 2600 Richmond Ave Ste 480 Houston, TX 77057          Phone: (832)778-8820    Fax:(832)778-2465          TST

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com



## EXHIBIT "E"

### RESTAURANT ADDENDUM

**RE:   LEASE DATED MAY 1, 2016 BETWEEN 11681 INTERESTS LTD., AS LANDLORD AND RIPPED T-SHIRT, LLC AND BEER NATION CORP., AS TENANTS FOR 11681 WESTHEIMER, HOUSTON, HARRIS COUNTY, TEXAS**

Due to the nature of the permitted use language as provided for in above referred Lease Agreement, the following provisions shall be incorporated as part of this Lease:

1. Tenant shall install a separate flow meter to measure the amount of water usage of Tenant's business at the Premises. Tenant shall be responsible for reading this flow meter and reporting in writing the readings each month, such written report to accompany the monthly rent payment. Such written report to include the date of the reading, the gallon reading on the meter, and Tenant's name. The monthly gallon usage will be used to determine a monthly utility escrow shall be required of Tenant, and the amount of such escrow, and for any year-end adjustments for actual utility consumption versus the escrow. Tenant's failure to report monthly readings will result in a $50.00 charge per month to cover the cost of Landlord having to obtain such readings.

   The rate applied to the water usage shall be the applicable utility company rates assessed for water and wastewater on the meter that serves the building for the Premises. Any wastewater surcharges shall be directly charged to restaurant users only and not pro rata.

2. Tenant shall be responsible for the cleaning, maintenance, repair and replacement of the grease trap serving the Premises, and to the extent the grease trap is located in the Common Areas of the Shopping Center, Tenant shall be responsible for the plumbing lines between the grease trap and its connection to the Premises. Tenant must provide Landlord with a grease trap maintenance agreement which indicates any chemical treatment applications and frequency of pumping or treatments. A grease trap maintenance contract must be in effect at all times. Landlord may require Tenant to increase the frequency of pumping or treatments in the event there is excess grease spill-over or a wastewater surcharge increase due to the chemical makeup of the wastewater.

3. Tenant shall provide Landlord with a vent hood maintenance contract. In addition, Tenant shall install metal receptacles on the roof around the vent hood to catch any dripping grease being discharged from the vent. Such receptacles must be dumped in order to prevent grease from accumulating on the roof. In the event grease does build up on the roof, Tenant shall be liable to Landlord for any damage and costs related thereto or damage caused by negligence while accessing the roof.

4. Tenant shall secure a dumpster of a sufficient size with a sufficient number of dumping frequencies to avoid odor, trash accumulation and unsightly mess. In the event Landlord must incur costs related to extra dumps, pressure washing or debris pickup, such costs plus a 25% administrative fee shall be the responsibility of Tenant. Such cost plus administrative charge is due upon demand. Failure to pay upon demand shall constitute a material breach and default of this Lease making all remedies available to Landlord as provided herein.

5. Tenant will be directly responsible for asphalt or concrete repairs due to damage caused by delivery vehicles servicing Tenant's Premises.

INITIALS: LANDLORD: _____   TENANT: _____

# Exhibit "B"

**Proposed Order**
**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **BEER NATION, INC.,**[2] | § | **Case No. 17-34707** |
| | § | |
| **Debtor.** | § | **CHAPTER 11 CASE** |
| | § | |
| | § | |

**ORDER GRANTING EMERGENCY MOTION TO REJECT**
**RESTAURANT LEASE WITH 11681 INTERESTS LTD.** *NUNC PRO TUNC*

Came on for consideration, the Emergency Motion to Reject Restaurant Lease with 11681 Interests Ltd. *Nunc Pro Tunc* (the "**Motion**"), filed by Beer Nation, Inc., the above-captioned-debtor and debtor in possession (the "**Debtor**"). Having considered the Motion and arguments of counsel; finding sufficient notice of the Motion having been provided to the necessary parties under the circumstances; having determined that the relief sought in the Motion is in the best interests of the Debtor, its estate, and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; it is therefore

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED.

2. Pursuant to section 365(a) of the Bankruptcy Code, the Commercial Lease (the "**Lease**"), between the Debtor and 11681 Interests Ltd. (the "Landlord') is deemed rejected and terminated as of August 2, 2017 (the "**Effective Date**").

---

[2]     The Debtor's federal tax number is # 81-2728661.

3.      As of the Effective Date, the Debtor is relieved from any further obligations under the Lease.

SIGNED THIS_____day of August, 2017.

_____
UNITED STATES BANKRUPTCY COURT

7